## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK D. HOGUE, Ph.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Civil Action No. 25-1713 |
| | ) |
| SLIPPERY ROCK UNIVERSITY, | ) |
| KAREN RILEY, Ph.D., KEITH DILS, | ) |
| Ed.D., and HOLLY MCCOY, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff Mark D. Hogue, Ph.D., by and through undersigned counsel, files the following Complaint in civil action.

## I.  PARTIES

1.      Plaintiff Mark D. Hogue, Ph.D. ("Dr. Hogue") is a citizen of the United States who resides in New Wilmington, PA 16142.

2.      Defendant Slippery Rock University ("SRU") is one of the 14 universities in the Pennsylvania State System of Higher Education ("PASSHE") with administrative offices at 1 Morrow Way, Slippery Rock, Pennsylvania 16057.

3.      Defendant Karen Riley, Ph.D. is the President of SRU with a business address at 1 Morrow Way, Slippery Rock, Pennsylvania 16057, and she is being sued in her official capacity.

4.      Defendant Keith Dils, Ed.D. is the Dean of SRU's College of Education with a business address at 1 Morrow Way, Slippery Rock, Pennsylvania 16057, and he is being sued in his official capacity.

5.    Defendant Holly McCoy is the Chief Human Resources Officer for SRU with a business address at 1 Morrow Way, Slippery Rock, Pennsylvania 16057, and she is being sued in her official capacity.

## II.  JURISDICTION

6.    The jurisdiction of this Court over the matters in this Complaint is founded upon 28 U.S.C. § 1331.

## III.  VENUE

7.    The facts related in this Complaint occurred primarily in Butler County, Pennsylvania, in the Western District of Pennsylvania; therefore, venue is appropriate in this Court.

## IV.  ADMINISTRATIVE EXHAUSTION

8.    On or about November 22, 2024, Dr. Hogue filed an EEOC/PHRC charge of disability discrimination – intentional disability discrimination and failure to accommodate docketed as EEOC No. 533-2025-00500.

9.    Dr. Hogue filed an amended EEOC/PHRC Charge of disability discrimination and retaliation on June 12, 2025.

10.    The EEOC issued a right to sue letter on August 19, 2025.

11.    Less than 90 days has passed since August 19, 2025 and, thus, Plaintiff's claims under the Americans With Disabilities Act have been properly exhausted.

12.    Plaintiff will move to amend the Complaint to add companion claims under the Pennsylvania Human Relations Act upon exhaustion of the administrative remedies.

## V.  FACTS

13.     Dr. Hogue is a tenured Associate Professor in the Department of Curriculum, Instruction, and Educational Leadership ("CIEL") in the College of Education of SRU.

14.     Prior to a recent merger, Dr. Hogue was in the Department of Secondary Education/Foundations of Education ("SEFE").

15.     The President of SRU is Dr. Karen Riley, the Provost is Dr. Michael Zieg, the Dean of the College of Education is Dr. Keith Dils, the Chair of the CIEL Department and Vice-President SRU-APSCUF is Dr. Michelle Amodei, and the Assistant Chair of the CIEL Department and President SRU-APSCUF is Dr. Jason Hilton.

16.     Dr. Hogue suffers from physical and mental disabilities.

17.     The physical disability is irritable bowel syndrome that is triggered by stress and stress is manifested by an environment that is not conducive to the ability to use the bathroom in a timely manner, elevating the concern of a less than dignifying episode near or during class, or in a meeting, as Dr. Hogue experienced in January 2024 before taking FMLA.

18.     The mental impairment is anxiety, situational anxiety, and adjustment disorder with anxious mood for which Dr. Hogue recently was prescribed medication.

19.     This impairment is exacerbated by stress including stress at work.

20.     This impairment causes difficulty thinking and concentrating, causes trouble sleeping, and impacts his ability to work.

21.     Physical symptoms include night sweats, fatigue, loss of appetite, trouble sleeping, and severe diarrhea.

22.     Dr. Hogue created the Principal Program along with all of its courses.

23.     Dr. Hogue, along with Dr. Edwin Christmann (now retired), taught all of the classes in the Principal Program.

24.     The Principal Program is a fully online graduate certificate program.

25.     Dr. Christmann created the Education Doctorate program.

26.     Dr. Christmann, along with Dr. Hogue, taught the majority of the courses offered in the Education Doctorate Program.

27.     The Education Doctorate program likewise is a fully online graduate program.

28.     Since Summer 2018, Dr. Hogue has taught a total of 10 different online courses.

29.     Six of those he created, designed, and developed.

30.     Of those six, four are dual listed for the Principal and Doctorate Programs and two are Doctorate Program specific.

31.     For Fall 2024 semester, Dr. Hogue was assigned two online courses and two in person courses.

32.     On May 30, 2024, Dr. Hogue requested a reasonable accommodation for his disabilities for the Fall 2024 semester to teach a full schedule of online, asynchronous classes, conduct virtual office hours, and attend virtual meetings.

33.     There were several online, asynchronous classes available that Dr. Hogue was qualified to teach and successfully had taught in the past.

34.     For example, Dr. Hogue developed one of the then unassigned Fall 2024 online graduate classes, SEFE 801: Educational Administration: Concepts and Practices.

35.     Carrie Peluso is the SRU Benefits and Transactions Manager.

36.     By email dated July 3, 2024, with a copy to Dean Dils, Ms. Peluso informed Dr.

4

Hogue that his accommodation request was denied.

37.    The email stated that although Dr. Hogue's medical documentation established a disability, the accommodation requested was not reasonable.

38.    Ms. Peluso refused to offer a remote teaching schedule as an accommodation because allegedly an essential function of the position "is to teach classes in the modality offered."

39.    This was a blanket denial of remote teaching accommodations for faculty with disabilities like Dr. Hogue.

40.    Dr. Hogue appealed the reasonable accommodation denial by letter dated July 9, 2024.

41.    Holly M. McCoy is SRU's Chief Human Resources Officer.

42.    By letter dated July 17, 2024, Ms. McCoy denied Dr. Hogue's appeal of the reasonable accommodation denial.

43.    Ms. McCoy stated that the requested accommodation of a fully online, asynchronous schedule was not reasonable because allegedly the "essential functions of a faculty member require the employee to teach classes as assigned, including onsite and in-person."

44.    Again this was a blanket denial of remote teaching accommodations for faculty with disabilities like Dr. Hogue.

45.    Contrary to SRU's assertion, teaching in-person is not an essential function of a faculty member.

46.    For example, there is no policy, contractual definition, or pre-existing job description defining "full duty" for an Associate Professor, much less one stating that teaching in-person in the classroom is an essential function of the job.

47.     Teaching and conducting office hours in-person is not an essential function of Dr. Hogue's job as both he and other faculty members have asynchronously and successfully taught many of their classes remotely in the past and the University even has a framework in place for doing so.

48.     Neither the CBA nor any University job or course description states that teaching in-person in the classroom and conducting office hours in-person are essential functions of the position of Associate Professor in general and of Dr. Hogue's position in particular.

49.     The current APSCUF CBA allows for remote (online) student consultation (i.e. advisement, office hours).

50.     Allowing Dr. Hogue to teach his 2024 Fall semester courses online would not have entailed significant expense to the University and was not unworkable technology-wise; neither of these reasons were cited by SRU in the denial.

51.     A significant percentage of classes offered in the CIEL Department are fully online, as approved through the university curriculum process.

52.     CIEL offers 10 online graduate programs (mix of certifications and degrees) which means that ALL classes in these programs (outside of student teaching, field-based classes, and practicums) are fully online.

53.     Dean Dils was aware of Dr. Hogue's reasonable accommodations request.

54.     He participated in the initial Zoom meeting with Carrie Peluso and shared a possible alternative that was neither reasonable nor feasible, namely, having a graduate assistant or teaching assistant help with larger classes which is strictly prohibited.

55.     The possibility of getting a teaching assistant or graduate assistant to assist with a

larger class in the auditorium violated the CBA and did not propose a viable solution to Dr. Hogue's health needs.

56.    Based on information and belief, Chair Amodei was not involved in the determination of Dr. Hogue's request for a remote work accommodation for the Fall 2024 semester.

57.    Thus, there was no individual assessment whether Dr. Hogue's reasonable accommodation request could be granted absent any undue hardship to the University.

58.    For the Fall 2024 semester, Dr. Hogue reluctantly agreed to a schedule that included in-person student teacher and field observations.

59.    Unfortunately, Dr. Hogue ran into problems with in person observations and meetings due to his irritable bowel issues.

60.    By way of example, in September 2024, Dr. Hogue had to change a planned classroom visit to a phone call due to IBS issues he was experiencing in the late morning, as he notified Dean Dils.

61.    In October 2024, during a peer observation on campus, Dr. Hogue had IBS issues that caused him to spend a good portion of the class observation in the men's room that produced embarrassment and tremendous concern about having to teach in-person for the Spring 2025 semester.

62.    By email dated October 15, 2024, Dr. Hogue requested reasonable accommodations from Dean Dils for the Spring 2025 semester.

63.    Dean Dils told him to contact Human Resources.

64.    On or about November 22, 2024, Dr. Hogue filed an EEOC/PHRC charge of disability discrimination – intentional disability discrimination and failure to accommodate.

7

65.     SRU was made aware of that EEOC/PHRC charge and filed a position statement in opposition dated March 14, 2025.

66.     The University denied Dr. Hogue's request for a reasonable accommodation for the Spring 2025 semester.

67.     The University has taken a hard line stance that Dr. Hogue *must* teach onsite and in-person for a certain specific percentage of his classes regardless of his disabilities even though that is not an essential function of his position and a fully online schedule is both available and the most sensible schedule for all involved (Dr. Hogue, his Department, and students).

68.     The University has not alleged nor can it show any undue hardship for a fully online schedule.

69.     Through early January 2025, Dr. Hogue was assigned a fully online, graduate teaching schedule of SEFE 576, 614/814, and 621/821.

70.     Around January 8, 2025, one of his advisees contacted him via email to share that SEFE 576 (fully online, graduate course) was being cancelled (allegedly) due to low enrollment (10 students were registered).

71.     However, other sections have run that have less than 10 graduate students and, thus, there was no legitimate justification to cancel this course.

72.     SEFE 576 is required for math/science students across a host of graduate and undergraduate classes.

73.     Dr. Hogue's Spring 2025 schedule was then revised to include 5 student teachers, a face-to-face class of SEFE 370, SEFE 614/814, and SEFE 621/821

74.     Dr. Hogue is aware that the University assigned one of his online courses which he

created and taught several times to a temporary faculty member which is outside the normal practice and procedure as full-time faculty members are afforded preference for courses.

75.    The University and its administrators repeatedly have assigned Dr. Hogue to in person student teacher and field observations, akin to a demotion since under normal circumstances that assignment goes to adjunct faculty, that has resulted in several embarrassing and damaging IBS incidents for Dr. Hogue.

76.    Dr. Hogue has been informed that numerous faculty members in his Department reside out of state and have been offered remote courses and short-term field experience courses favorable to their living arrangements.

77.    To his credit, Dr. Hogue attempted to provide onsite and in-person instruction as demanded by the University in the Fall 2024 and Spring 2025 semesters, with humiliating results due to incidents of his irritable bowel syndrome.

78.    For example, on March 4 and 6, 2025, Dr. Hogue had additional humiliating IBS incidents as he described via email to his supervisors as follows:

> On Tuesday, 3/4, I needed to use the restroom during class. We were finishing a lecture on reliability and planned to prepare for the upcoming exam (which was given today) with several summary review questions. I felt bad that while most of the class was able to stay beyond 12:15 to review (on account for my restroom visit), several students had a common hour commitment and had to leave and missed the review questions.
>
> More significantly, today I gave a 56-question objective exam during class. During class, I experienced sudden GI distress and needed to make an urgent trip to the bathroom. Regrettably, my class was unattended during the exam while I was in the bathroom. I am sorry for this but there was nothing that I could do. My absence during the test could have certainly introduced compromises in the testing protocol. When I returned following my episode, the remaining students (many finished the exam while I was in the bathroom) were working intently.

9

After class, I approached Tammy and asked for the toilet brush. She was very accommodating and kind. I took the humble walk down the hall with a toilet brush and a 1-gallon container of cleaning solution to clean the mess I left in the restroom. I was not interested in leaving this mess for a student, colleague, or custodial staff member.

I am doing my best, but you need to be aware of what is going on. This was a frustrating day.

Hogue email to Michelle Amodei copy to Dils of 3/6/2025.

79.    A subsequent humiliating incident in which Dr. Hogue soiled his pants at work

(and desk chair) occurred on April 8, 2025.

80.    He described it via email to Dean Dils and Dr. Amodei as follows:

I was in an online scheduling session with an undergrad student in my SRU office about 30-35 minutes ago. During this time, I had a sudden GI attack. I soiled my pants/had an accident. I am so embarrassed. I hobbled to the men's room in the basement of McKay and cleaned myself up as best I could, but unfortunately, I have (anal) leakage on my office chair. I do not have any proper cleaning products in my office to attempt to clean the mess and I am afraid that the liquid matter may quickly settle into the cushion of the chair. Again, I am mortified that this happened. I can buy a replacement chair if you want me to. I have photos that I took to document this event if you need them - just let me know. I was hoping to visit a student teacher prior to school dismissal today, but I need to go home. Again, I apologize about the nature of this email, but you need to know this. I am sorry. Please advise.

Hogue email to Dils and Amodei of 4/8/2025.

81.    In April 2025, Dr. Hogue again requested accommodations of all remote classes for

the Fall 2025 semester.

82.    Dr. Hogue proposed a schedule to address his disability accommodation needs of

three remote/online upper level courses that were available for him to teach, constituted a full

workload, met an expressed departmental challenge, and served students by aligning his professional

skills to serve content-specific areas of high need in SRU's graduate programs.

83.    Dr. Hogue shared that he has had gastrointestinal issues on his way to campus, needing to stop at public restrooms and even along the side of the road, and that he keeps a full supply of bathroom related materials in his personal vehicle for such events.

84.    Three months later, on July 18, 2025, Ms. Peluso informed Dr. Hogue that his reasonable accommodation was denied (again).

85.    Ms. Peluso indicated that there was a preset limit of the ability to convert 29.99% of in person classes to remote as needed and in accordance with the provisions of the applicable CBA.

86.    Dr. Hogue again appealed that reasonable accommodation denial and his appeal was denied.

87.    The University denied him a fully remote online schedule and the ability to conduct student consultation hours fully remotely.

88.    The University assigned him student teaching supervision and field experience supervision.

89.    On September 23, 2025, during a student teaching observation at an elementary school, Dr. Hogue was forced to miss approximately 10-15 minutes of a student teacher's scheduled lesson observations due to an urgent need to use the restroom.

90.    Dr. Hogue completed the observation and post-conference to the best of his ability, and apologized for the disruption of the class.

91.    On October 7, 2025, while performing his assigned duty as a student teaching supervisor at an elementary school, Dr. Hogue suffered a GI attack resulting in an explosive episode that lasted a considerable amount of time, and caused him to have to go to the School Secretary to request cleaning supplies to clean the toilet which he did.

92.     This string of events was observed by students and staff in the hallway, and interfered with his class observation and caused him to be exhausted, embarrassed, and frustrated.

93.     The University has not offered any accommodations for his assigned mixed schedule of online teaching and student teacher supervision.

94.     The University has failed to accommodate the complications and embarrassment of assigning Dr. Hogue, a disabled employee, to supervise teachers in-person in different schools and classrooms outside the University and away from his home.

95.     The University's insistence of onsite and in-person performance for a certain percentage of work is not an effective accommodation.

96.     Dr. Hogue's proposed accommodations have medical support and would address his disability needs.

97.     In contrast, the University's proposed accommodations including about an ergonomic assessment are not supported by medical opinion and do not address his disability needs.

98.     Based on the incidents set forth above, the "accommodation" of onsite and in-person performance interferes with Dr. Hogue's ability to perform the essential functions of his position.

99.     Those functions include student instruction and student advising without humiliation and embarrassment due to his IBS and other disabilities.

100.    Dr. Hogue can perform these functions fully remote and online without any undue hardship to the University.

101.    The University's failure to provide an effective accommodation for Dr. Hogue is a continuing violation of the federal and state law including the Rehabilitation Act and the Americans

With Disabilities Act.

102.    Teaching in-person and conducting office hours in-person are not essential functions of the job of Associate Professor of SEFE and/or CIEL at the University.

103.    Dr. Hogue can fully perform the essential functions of his job by teaching remotely (as he had done in the past).

104.    As a result, Dr. Hogue is "qualified" for purposes of a prima facie case under the ADA, the Rehabilitation Act, and the Pennsylvania Human Relations Act.

105.    Dr. Hogue suffered an adverse employment action as a result of discrimination when SRU repeatedly denied his reasonable accommodation request and forced him to work in-person which has resulted in embarrassing incidents with his IBS issues and other disabilities.

106.    SRU cannot demonstrate that Dr. Hogue's request for a remote work accommodation was unreasonable or would have caused an undue burden on the University.

107.    It would not entail significant expense to the University and was not unworkable technology-wise.

108.    Indeed, Dr. Hogue had just taught four classes in the Summer 2024 using the University's remote format.

109.    Based on the quick turnaround and the wording of the initial reasonable accommodation denials, SRU failed to properly consider Dr. Hogue's particular and serious individual circumstances before denying his request to teach and conduct office hours remotely for the Fall Semester of 2024 or anytime thereafter.

110.    SRU has used its blanket exclusion for any faculty member's request to teach fully remote in denying Dr. Hogue's requests.

111.    For Winter Term 2025, Dr. Hogue was offered an online course with expected low enrollment since most if not all students who needed and wanted to take that course would have done so in the Fall 2024 semester.

112.    The discrimination at issue was intentional.

113.    SRU exhibited deliberate indifference to the repeated acts of discrimination.

114.    SRU had and has knowledge that a federally protected right is substantially likely to be violated and has failed to act despite that knowledge, and has made a deliberate choice not to accommodate Dr. Hogue despite acknowledging that he has recognized disabilities.

115.    As a result of SRU's actions, Dr. Hogue has suffered damages.

116.    A jury trial is requested.

## VI.  CAUSES OF ACTION

### Count I
### Plaintiff v. SRU
### Disability Discrimination
### Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794

117.    The preceding paragraphs are incorporated as if set forth at length herein.

118.    "No otherwise qualified individual with a disability in the United States, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. §794.

119.    SRU is a program or activity that receives federal funds, and a covered employer under Section 504.  29 U.S.C. §794(b)(2).

120.    Dr. Hogue has impairments that substantially affect one or more major bodily

functions and/or major life activities, including but not limited to, his irritable bowel syndrome and his anxiety, situational anxiety, and adjustment disorder with anxious mood for which Dr. Hogue was prescribed medication.

121.    Dr. Hogue is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations, including based on his education and experience as a SRU professor.

122.    Teaching in person or conducting office hours in person is not an essential function of Dr. Hogue's position.

123.    Dr. Hogue was prevented from performing the job when the University refused to allow him to teach a full schedule of online, asynchronous classes, conduct virtual office hours, and attend virtual meetings.

124.    Dr. Hogue's proposed accommodation was not unreasonable and would not cause SRU any undue hardship.

125.    SRU's justifications for the refusal to accommodate are pretextual.

126.    Dr. Hogue suffered damages as a result of SRU's discrimination.

127.    WHEREFORE, Dr. Hogue respectfully requests the following relief:

a.    A declaratory judgment that SRU's refusal to provide him with reasonable remote work accommodations pursuant to its illegal policies and its actions and inactions as described herein constitutes discrimination against him because of his disabilities in violation of Section 504.

b.    An injunction ordering SRU to provide him with a remote work accommodation until it is medically-cleared for him to return to work fully on campus, and restore all of the

emoluments of employment of which he has been denied.

c.  An injunction against SRU requiring it to rescind its no-fully remote work accommodations rule, policy and/or practice pursuant to which it has been denying such accommodations to Dr. Hogue and/or other faculty with disabilities, and forbidding it from applying blanket policies designed to deny reasonable accommodations to otherwise qualified employees without fully complying with the interactive process demanded by Section 504 and other applicable federal and state disability laws, and affording such accommodations unless there is individualized evidence that it would constitute an undue hardship to the University.

d.  An injunction requiring SRU to obtain comprehensive training for its Human Resources staff and all responsible management on the requirements of Section 504 and other applicable federal and state disability laws.

e.  Compensatory damages for the financial losses and other compensatory losses Dr. Hogue sustained as a result of SRU's illegal actions.

f.  Award Plaintiff and his counsel all costs and attorneys fees he has incurred or will incur in the prosecution of this action.

g.  Award all other relief which may be just and proper under the circumstances.

**Count II**
**Plaintiff v. SRU**
**Failure To Accommodate**
**Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794**

128.  The preceding paragraphs are incorporated as if set forth at length herein.

129.  Dr. Hogue has impairments that substantially affect one or more major bodily functions and/or major life activities, including but not limited to, his irritable bowel syndrome and

his anxiety, situational anxiety, and adjustment disorder with anxious mood for which Dr. Hogue

was prescribed medication.

130.    Dr. Hogue is otherwise qualified to perform the essential functions of the job, with

or without reasonable accommodations, including based on his education and experience as a SRU

professor.

131.    Dr. Hogue is a qualified individual with a disability.

132.    Dr. Hogue repeatedly has requested reasonable accommodations for his disabilities.

133.    SRU did not make reasonable accommodations to the known physical and mental

disabilities of Dr. Hogue.

134.    To the extent SRU offered accommodations, they have proven not to be reasonable

including that Dr. Hogue has had IBS issues that interfered with his in-person observations and

meetings.

135.    SRU could have provided the requested accommodation and Dr. Hogue could have

been reasonably accommodated.

136.    SRU did not engage in the interactive process in good faith.

137.    The University did not make a good faith effort to accommodate Dr. Hogue during

the Fall 2024 Semester, the Spring 2025 Semester, or the Fall 2025 Semester.

138.    Dr. Hogue could have easily been accommodated without causing an undue burden

on the University.

139.    SRU has denied Dr. Hogue's accommodation requests without conducting a good

faith interactive process, based on a pre-determined institutional model that was applied to him

automatically, without regard to his rights as a person with a disability under federal and state law,

and without regard to whether his accommodation request was objectively reasonable, or whether it could be provided without significant difficulty or expense.

140.    SRU's justifications for the refusal to accommodate are pretextual.

141.    Dr. Hogue suffered damages as a result of SRU's failure to accommodate.

142.    WHEREFORE, Dr. Hogue respectfully requests the following relief:

a.    A declaratory judgment that SRU's refusal to provide him with reasonable remote work accommodations pursuant to its illegal policies and its actions and inactions as described herein constitutes discrimination against him because of his disabilities in violation of Section 504.

b.    An injunction ordering SRU to provide him with a remote work accommodation until it is medically-cleared for him to return to work fully on campus, and restore all of the emoluments of employment of which he has been denied.

c.    An injunction against SRU requiring it to rescind its no-fully remote work accommodations rule, policy and/or practice pursuant to which it has been denying such accommodations to Dr. Hogue and/or other faculty with disabilities, and forbidding it from applying blanket policies designed to deny reasonable accommodations to otherwise qualified employees without fully complying with the interactive process demanded by Section 504 and other applicable federal and state disability laws, and affording such accommodations unless there is individualized evidence that it would constitute an undue hardship to the University.

d.    An injunction requiring SRU to obtain comprehensive training for its Human Resources staff and all responsible management on the requirements of Section 504 and other applicable federal and state disability laws.

e.    Compensatory damages for the financial losses and other compensatory losses Dr. Hogue

sustained as a result of SRU's illegal actions.

f.    Award Plaintiff and his counsel all costs and attorneys fees he has incurred or will incur in

the prosecution of this action.

g.    Award all other relief which may be just and proper under the circumstances.

**Count III**
**Plaintiff v. SRU**
**Disparate Impact**
**Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794**

143.    The preceding paragraphs are incorporated as if set forth at length herein.

144.    Section 504 prohibits employers from utilizing standards, criteria, or methods of

administration that have the purpose or effect of discrimination on the basis of disability.  42 U.S.C.

§12112 (b) (3).

145.    Standards that screen out or tend to screen out an individual with a disability or a

class of such individuals constitute "discrimination" under Section 504 unless those standards or

criteria are job-related and consistent with business necessity.  42 U.S.C. §12112 (b)(6).

146.    SRU has a policy and practice of denying all requests for fully remote teaching to

individuals with disabilities including citing a preset limit of the ability to convert 29.99% of in

person classes to remote as needed and in accordance with the provisions of the applicable CBA, and

the insistence that a faculty member teach classes in the modality offered.

147.    That policy or practice or policy had an adverse impact on Dr. Hogue as well as other

faculty who have disabilities and require reasonable accommodations.

148.    There is a causal relationship between the identified practice and the disparate

19

impact.

149.    There is no business necessity for this policy and practice.

150.    Dr. Hogue suffered damages as a result of SRU's policy and practice which have a disparate impact on individuals with disabilities.

151.    As applied to Dr. Hogue, SRU's facially invalid no-accommodation, no-exceptions policy constitutes illegal disability discrimination in violation of his rights under Section 504.

152.    WHEREFORE, Dr. Hogue respectfully requests the following relief:

a.    A declaratory judgment that SRU's refusal to provide him with reasonable remote work accommodations pursuant to its illegal policies and its actions and inactions as described herein constitutes discrimination against him because of his disabilities in violation of Section 504.

b.    An injunction ordering SRU to provide him with a remote work accommodation until it is medically-cleared for him to return to work fully on campus, and restore all of the emoluments of employment of which he has been denied.

c.    An injunction against SRU requiring it to rescind its no-fully remote work accommodations rule, policy and/or practice pursuant to which it has been denying such accommodations to Dr. Hogue and/or other faculty with disabilities, and forbidding it from applying blanket policies designed to deny reasonable accommodations to otherwise qualified employees without fully complying with the interactive process demanded by Section 504 and other applicable federal and state disability laws, and affording such accommodations unless there is individualized evidence that it would constitute an undue hardship to the University.

d.    An injunction requiring SRU to obtain comprehensive training for its Human Resources staff

and all responsible management on the requirements of Section 504 and other applicable federal and state disability laws.

e.  Compensatory damages for the financial losses and other compensatory losses Dr. Hogue sustained as a result of SRU's illegal actions.

f.  Award Plaintiff and his counsel all costs and attorneys fees he has incurred or will incur in the prosecution of this action.

g.  Award all other relief which may be just and proper under the circumstances.

**Count IV**
**Plaintiff v. SRU**
**Interference With Rights**
**Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794**

153.    The preceding paragraphs are incorporated as if set forth at length herein.

154.    Section 504 forbids coercing, intimidating, threatening, or interfering with an individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, the protections of the Act.  42 U.S.C. §12203(b).

155.    The University meddled with Dr. Hogue's request for a reasonable accommodation of remote teaching by applying an inflexible blanket policy that would not permit 100% remote teaching.

156.    As a result, Dr. Hogue's requests for a remote work accommodation were essentially already dead-on-arrival.

157.    The University further meddled with Dr. Hogue's career when it claimed that in-person teaching was an essential function of his job as a full-time Associate Professor, despite the fact that there was no history or written evidence that in-person teaching was ever considered as an

essential function of a Associate Professor (or any other faculty member) at the University.

158.    Dr. Hogue suffered damages as a result of SRU's interference with his rights.

159.    WHEREFORE, Dr. Hogue respectfully requests the following relief:

a.    A declaratory judgment that SRU's refusal to provide him with reasonable remote work accommodations pursuant to its illegal policies and its actions and inactions as described herein constitutes discrimination against him because of his disabilities in violation of Section 504.

b.    An injunction ordering SRU to provide him with a remote work accommodation until it is medically-cleared for him to return to work fully on campus, and restore all of the emoluments of employment of which he has been denied.

c.    An injunction against SRU requiring it to rescind its no-fully remote work accommodations rule, policy and/or practice pursuant to which it has been denying such accommodations to Dr. Hogue and/or other faculty with disabilities, and forbidding it from applying blanket policies designed to deny reasonable accommodations to otherwise qualified employees without fully complying with the interactive process demanded by Section 504 and other applicable federal and state disability laws, and affording such accommodations unless there is individualized evidence that it would constitute an undue hardship to the University.

d.    An injunction requiring SRU to obtain comprehensive training for its Human Resources staff and all responsible management on the requirements of Section 504 and other applicable federal and state disability laws.

e.    Compensatory damages for the financial losses and other compensatory losses Dr. Hogue sustained as a result of SRU's illegal action.

f.    Award Plaintiff and his counsel all costs and attorneys fees he has incurred or will incur in

the prosecution of this action.

g.    Award all other relief which may be just and proper under the circumstances.

**Count V**
**Plaintiff v. SRU**
**Retaliation**
**Section 504 of the Rehabilitation Act of 1973**

160.    The preceding paragraphs are incorporated as if set forth at length herein.

161.    Section 504 forbids discrimination against any person because she has complained

of or opposed any act or practice made unlawful by the Act, or participated in any manner in a

proceeding related to the discrimination it prohibits. 42 U.S.C. §12203(a).

162.    Dr. Hogue engaged in protected conduct when he requested accommodations

and also when he filed an EEOC/PHRC Charge of Discrimination.

163.    Following the protected activity, Dr. Hogue suffered materially adverse actions

including, but not limited to, the denial of requested reasonable accommodations.

164.    A causal connection exists based on the close temporal proximity between the

protected conduct and the materially adverse actions, antagonism, and pretext.

165.    Dr. Hogue suffered damages as a result of SRU's retaliation.

166.    WHEREFORE, Dr. Hogue respectfully requests the following relief:

a.    A declaratory judgment that SRU's refusal to provide him with reasonable remote work

accommodations pursuant to its illegal policies and its actions and inactions as described

herein constitutes discrimination against him because of his disabilities in violation of

Section 504.

23

b.    An injunction ordering SRU to provide him with a remote work accommodation until it is medically-cleared for him to return to work fully on campus, and restore all of the emoluments of employment of which he has been denied.

c.    An injunction against SRU requiring it to rescind its no-fully remote work accommodations rule, policy and/or practice pursuant to which it has been denying such accommodations to Dr. Hogue and/or other faculty with disabilities, and forbidding it from applying blanket policies designed to deny reasonable accommodations to otherwise qualified employees without fully complying with the interactive process demanded by Section 504 and other applicable federal and state disability laws, and affording such accommodations unless there is individualized evidence that it would constitute an undue hardship to the University.

d.    An injunction requiring SRU to obtain comprehensive training for its Human Resources staff and all responsible management on the requirements of Section 504 and other applicable federal and state disability laws.

e.    Compensatory damages for the financial losses and other compensatory losses Dr. Hogue sustained as a result of SRU's illegal actions.

f.    Award Plaintiff and his counsel all costs and attorneys fees he has incurred or will incur in the prosecution of this action.

g.    Award all other relief which may be just and proper under the circumstances.

**Count VI**
**Plaintiff v. President Riley, Dean Dils, and Ms. McCoy**
**Disability Discrimination**
**<u>Americans With Disabilities Act</u>**

167.    The preceding paragraphs are incorporated as if set forth at length herein.

24

168.     SRU is a covered employer under the Americans With Disabilities Act.

169.     Plaintiff brings this ADA claim against the individual Defendants President Riley, Dean Dils, and Ms. McCoy in their official capacities for prospective injunctive relief pursuant to *Ex Parte Young*.

170.     Dr. Hogue has impairments that substantially affect one or more major bodily functions and/or major life activities, including but not limited to, his irritable bowel syndrome and his anxiety, situational anxiety, and adjustment disorder with anxious mood for which Dr. Hogue was prescribed medication.

171.     Dr. Hogue is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations, including based on his education and experience as a SRU professor.

172.     Teaching in person or conducting office hours in person is not an essential function of Dr. Hogue's position.

173.     Dr. Hogue was prevented from performing the job when the University refused to allow him to teach a full schedule of online, asynchronous classes, conduct virtual office hours, and attend virtual meetings.

174.     Dr. Hogue's proposed accommodation was not unreasonable and would not cause SRU any undue hardship.

175.     SRU's justifications for the refusal to accommodate are pretextual.

176.     Dr. Hogue suffered damages as a result of SRU's discrimination.

177.     WHEREFORE, Dr. Hogue respectfully requests the following relief:

a.     A declaratory judgment that the Individual Defendants' refusal to provide him with

reasonable remote work accommodations pursuant to its illegal policies and its actions and inactions as described herein constitutes discrimination against him because of his disabilities in violation of the ADA.

b.      An injunction ordering the Individual Defendants to provide him with a remote work accommodation until it is medically-cleared for him to return to work fully on campus, and restore all of the emoluments of employment of which he has been denied.

c.      An injunction against the Individual Defendants requiring them to rescind its no-fully remote work accommodations rule, policy and/or practice pursuant to which it has been denying such accommodations to Dr. Hogue and/or other faculty with disabilities, and forbidding them from applying blanket policies designed to deny reasonable accommodations to otherwise qualified employees without fully complying with the interactive process demanded by the ADA and other applicable federal and state disability laws, and affording such accommodations unless there is individualized evidence that it would constitute an undue hardship to the University.

d.      An injunction requiring the Individual Defendants to obtain comprehensive training for their Human Resources staff and all responsible management on the requirements of the ADA and other applicable federal and state disability laws.

e.      Award Plaintiff and his counsel all costs and attorneys fees he has incurred or will incur in the prosecution of this action.

f.      Award all other relief which may be just and proper under the circumstances.

**Count VII**
**Plaintiff v. President Riley, Dean Dils, and Ms. McCoy**
**Failure To Accommodate**
**Americans With Disabilities Act**

178.    The preceding paragraphs are incorporated as if set forth at length herein.

179.    Plaintiff brings this ADA claim against the individual Defendants President Riley, Dean Dils, and Ms. McCoy in their official capacities for prospective injunctive relief pursuant to *Ex Parte Young*.

180.    Dr. Hogue has impairments that substantially affect one or more major bodily functions and/or major life activities, including but not limited to, his irritable bowel syndrome and his anxiety, situational anxiety, and adjustment disorder with anxious mood for which Dr. Hogue was prescribed medication.

181.    Dr. Hogue is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations, including based on his education and experience as a SRU professor.

182.    Dr. Hogue is a qualified individual with a disability.

183.    Dr. Hogue repeatedly has requested reasonable accommodations for his disabilities.

184.    SRU did not make reasonable accommodations to the known physical and mental disabilities of Dr. Hogue.

185.    To the extent SRU offered accommodations, they have proven not to be reasonable including that Dr. Hogue has had IBS issues that interfered with his in-person observations and meetings.

186.    SRU could have provided the requested accommodation and Dr. Hogue could have

been reasonably accommodated.

187.    SRU did not engage in the interactive process in good faith.

188.    The University did not make a good faith effort to accommodate Dr. Hogue during the Fall 2024 Semester, the Spring 2025 Semester, or the Fall 2025 Semester.

189.    Dr. Hogue could have easily been accommodated without causing an undue burden on the University.

190.    SRU has denied Dr. Hogue's accommodation requests without conducting a good faith interactive process, based on a pre-determined institutional model that was applied to him automatically, without regard to his rights as a person with a disability under federal and state law, and without regard to whether his accommodation request was objectively reasonable, or whether it could be provided without significant difficulty or expense.

191.    SRU's justifications for the refusal to accommodate are pretextual.

192.    Dr. Hogue suffered damages as a result of SRU's failure to accommodate.

193.    WHEREFORE, Dr. Hogue respectfully requests the following relief:

a.    A declaratory judgment that the Individual Defendants' refusal to provide him with reasonable remote work accommodations pursuant to its illegal policies and its actions and inactions as described herein constitutes discrimination against him because of his disabilities in violation of the ADA.

b.    An injunction ordering the Individual Defendants to provide him with a remote work accommodation until it is medically-cleared for him to return to work fully on campus, and restore all of the emoluments of employment of which he has been denied.

c.    An injunction against the Individual Defendants requiring them to rescind its no-fully remote

28

work accommodations rule, policy and/or practice pursuant to which it has been denying such accommodations to Dr. Hogue and/or other faculty with disabilities, and forbidding them from applying blanket policies designed to deny reasonable accommodations to otherwise qualified employees without fully complying with the interactive process demanded by the ADA and other applicable federal and state disability laws, and affording such accommodations unless there is individualized evidence that it would constitute an undue hardship to the University.

d.    An injunction requiring the Individual Defendants to obtain comprehensive training for their Human Resources staff and all responsible management on the requirements of the ADA and other applicable federal and state disability laws.

e.    Award Plaintiff and his counsel all costs and attorneys fees he has incurred or will incur in the prosecution of this action.

f.    Award all other relief which may be just and proper under the circumstances.

**Count VIII**
**Plaintiff v. President Riley, Dean Dils, and Ms. McCoy**
**Disparate Impact**
**Americans With Disabilities Act**

194.    The preceding paragraphs are incorporated as if set forth at length herein.

195.    Plaintiff brings this ADA claim against the individual Defendants President Riley, Dean Dils, and Ms. McCoy in their official capacities for prospective injunctive relief pursuant to *Ex Parte Young*.

196.    SRU has a policy and practice of denying all requests for fully remote teaching to individuals with disabilities including citing a preset limit of the ability to convert 29.99% of in

person classes to remote as needed and in accordance with the provisions of the applicable CBA, and the insistence that a faculty member teach classes in the modality offered.

197.    That policy or practice or policy had an adverse impact on Dr. Hogue as well as other faculty who have disabilities and require reasonable accommodations.

198.    There is a causal relationship between the identified practice and the disparate impact.

199.    There is no business necessity for this policy and practice.

200.    Dr. Hogue suffered damages as a result of SRU's policy and practice which have a disparate impact on individuals with disabilities.

201.    As applied to Dr. Hogue, SRU's facially invalid no-accommodation, no-exceptions policy constitutes illegal disability discrimination in violation of his rights under Section 504.

202.    WHEREFORE, Dr. Hogue respectfully requests the following relief:

a.    A declaratory judgment that the Individual Defendants' refusal to provide him with reasonable remote work accommodations pursuant to its illegal policies and its actions and inactions as described herein constitutes discrimination against him because of his disabilities in violation of the ADA.

b.    An injunction ordering the Individual Defendants to provide him with a remote work accommodation until it is medically-cleared for him to return to work fully on campus, and restore all of the emoluments of employment of which he has been denied.

c.    An injunction against the Individual Defendants requiring them to rescind its no-fully remote work accommodations rule, policy and/or practice pursuant to which it has been denying such accommodations to Dr. Hogue and/or other faculty with disabilities, and forbidding

them from applying blanket policies designed to deny reasonable accommodations to otherwise qualified employees without fully complying with the interactive process demanded by the ADA and other applicable federal and state disability laws, and affording such accommodations unless there is individualized evidence that it would constitute an undue hardship to the University.

d.   An injunction requiring the Individual Defendants to obtain comprehensive training for their Human Resources staff and all responsible management on the requirements of the ADA and other applicable federal and state disability laws.

e.   Award Plaintiff and his counsel all costs and attorneys fees he has incurred or will incur in the prosecution of this action.

f.   Award all other relief which may be just and proper under the circumstances.

**Count IX**
**Plaintiff v. President Riley, Dean Dils, and Ms. McCoy**
**Retaliation**
<u>**Americans With Disabilities Act**</u>

203.   The preceding paragraphs are incorporated as if set forth at length herein.

204.   Plaintiff brings this ADA claim against the individual Defendants President Riley, Dean Dils, and Ms. McCoy in their official capacities for prospective injunctive relief pursuant to *Ex Parte Young*.

205.   The ADA forbids discrimination against any person because he has complained of or opposed any act or practice made unlawful by the Act, or participated in any manner in a proceeding related to the discrimination it prohibits.

206.   Dr. Hogue engaged in protected conduct when he requested accommodations

and also when he filed an EEOC/PHRC Charge of Discrimination.

207.    Following the protected activity, Dr. Hogue suffered materially adverse actions including, but not limited to, the denial of requested reasonable accommodations.

208.    A causal connection exists based on the close temporal proximity between the protected conduct and the materially adverse actions, antagonism, and pretext.

209.    Dr. Hogue suffered damages as a result of SRU's retaliation.

210.    WHEREFORE, Dr. Hogue respectfully requests the following relief:

a.    A declaratory judgment that the Individual Defendants' refusal to provide him with reasonable remote work accommodations pursuant to its illegal policies and its actions and inactions as described herein constitutes discrimination against him because of his disabilities in violation of the ADA.

b.    An injunction ordering the Individual Defendants to provide him with a remote work accommodation until it is medically-cleared for him to return to work fully on campus, and restore all of the emoluments of employment of which he has been denied.

c.    An injunction against the Individual Defendants requiring them to rescind its no-fully remote work accommodations rule, policy and/or practice pursuant to which it has been denying such accommodations to Dr. Hogue and/or other faculty with disabilities, and forbidding them from applying blanket policies designed to deny reasonable accommodations to otherwise qualified employees without fully complying with the interactive process demanded by the ADA and other applicable federal and state disability laws, and affording such accommodations unless there is individualized evidence that it would constitute an undue hardship to the University.

d.    An injunction requiring the Individual Defendants to obtain comprehensive training for their Human Resources staff and all responsible management on the requirements of the ADA and other applicable federal and state disability laws.

e.    Award Plaintiff and his counsel all costs and attorneys fees he has incurred or will incur in the prosecution of this action.

f.    Award all other relief which may be just and proper under the circumstances.

Respectfully submitted,

LIEBER HAMMER HUBER PAUL & HOFFMAN, P.C.

s/James B. Lieber _____
James B. Lieber
Pa. I.D. No. 21748
jlieber@lhhb-law.com
Thomas M. Huber
Pa. I.D. No. 83053
thuber@lhhb-law.com
Jacob M. Simon
Pa. I.D. No. 202610
jsimon@lhhb-law.com
1722 Murray Ave., 2nd floor
Pittsburgh, PA 15217
Phone: 412-687-2231

Counsel for Plaintiff